UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KEVIN CORRIGAN,

                  Petitioner,                **DECISION AND ORDER**

    -vs-                                No. 01-CV-6148

JAMES BARBERY,

                  Respondent.
_____

### INTRODUCTION

Petitioner Kevin Corrigan ("Corrigan") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c), the parties have consented to disposition of this matter by the undersigned.  Corrigan seeks to overturn his conviction solely on the basis that the reasonable doubt charge given at his trial was unconstitutional.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Corrigan was tried before a jury in Niagara County Court (Hannigan, J.) in September 1979 on charges stemming from two 1977 attacks.  At trial, the judge instructed the jurors that a reasonable doubt is one which "leaves your mind in state of suspense, so that you are not able to say that you are convinced to a moral certainty of the defendant's guilt." T.1371.[1]  According to the judge's charge, a reasonable doubt "must, therefore, be based entirely and absolutely upon some good, sound, substantial reason." T.1371. The judge again directed the jurors that if they were "morally and reasonably certain as to the defendant's guilt," it was their "duty to convict

---

[1] Citations to "T.__" refer to the trial transcript from Corrigan's jury trial.

[him]." T.1372.[2]  Defense counsel did not object to the charge as given.

Corrigan was convicted on September 19, 1979, of two counts of second degree murder, two counts of assault in the first degree, and four counts of attempted robbery in the first degree. On October 18, 1979, Corrigan was sentenced to two consecutive terms of 25 years to life.

On direct appeal, the Fourth Department unanimously affirmed Corrigan's conviction, *People v. Corrigan*, 139 A.D.2d 918 (4th Dept. 1988), but modified his sentence by reducing the aggregate minimum term of imprisonment from 50 years to 25 years.  The New York Court of Appeals denied leave to appeal on May 9, 1988.  *People v. Corrigan*, 72 N.Y.2d 917 (1988).

Corrigan challenged the constitutionality of the reasonable doubt instruction given at his trial for the first time in a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 filed on January 31, 1997.  Judge Hannigan denied the motion in an order entered May 8, 1997, relying exclusively on the state procedural bar of C.P.L. § 440.10(2)(c) (trial court must deny a motion to vacate a judgment where, although sufficient

---

[2]       Up until 1990, the Supreme Court had approved the use of the phrase "moral certainty" in defining the concept of reasonable doubt. *See Fidelity Mut. Life Assn. v. Mettler*, 185 U.S. 308, 317 (1902) ("Proof to a 'moral certainty' is an equivalent phrase with 'beyond a reasonable doubt.'"); *Wilson v. United States*, 232 U.S. 563, 570 (1914) (approving reasonable doubt instruction cast in terms of moral certainty).  New York state courts, however, criticized this formulation on the basis that it could be construed as diluting the prosecution's burden of proof. *See, e.g.*, *People v. Young*, 236 A.D.2d 800 (4th Dept.), *appeal denied*, 89 N.Y.2d 1017 (1997) (reversing conviction where trial court (Hannigan, J.) defined reasonable doubt as one of which jury was "morally and reasonably certain"); *People v. Moore*, 231 A.D.2d 918 (4th Dept.), *appeal denied*, 89 N.Y.2d 866 (1996) (same).
        The Supreme Court reversed its earlier course in *Cage v. Louisiana*, 498 U.S. 39 (1990), holding that a charge, when read as a whole, equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt," and stated that what was required was a "moral certainty" that the defendant was guilty, impermissibly raised the burden of proof and violated the Due Process Clause.  In a subsequent case, however, the Supreme Court upheld two other reasonable doubt instructions that contained some (but not all) of the three phrases found offensive in *Cage*. *See Victor v. Nebraska*, 511 U.S. 1, 12-16, 18-22 (1994).  The Supreme Court in *Victor* reasoned that the phrases "moral certainty" and "substantial doubt" did not lower the burden of proof because, in contrast to the challenged instruction in *Cage*, the context of the instructions given at the petitioners' trials clarified the meaning of the terms as being congruous with reasonable doubt. *See id.* at 16, 21.

facts appeared on the record to have permitted appellate review of the issues, the defendant unjustifiably failed to raise them on direct appeal).  The Fourth Department denied leave to appeal on August 1, 1997.

Corrigan filed an application for a writ of error *coram nobis* on October 3, 1997.  This motion was denied by the Fourth Department in a summary order entered November 19, 1997. *People v. Corrigan*, 670 N.Y.S.2d 649 (Table), 244 A.D.2d 1013 (4th Dept. 1997).   Corrigan did not seek leave to appeal.

Over two and a half years later, Corrigan challenged the propriety of the reasonable doubt instruction in a second C.P.L. § 440.10 motion filed June 13, 2000.  Corrigan relied upon the then-recent Second Circuit decision in *Gaines v. Kelly*, 202 F.3d 598 (2d Cir. 2000).[3]  County Court (Sperrazza, J.) again denied the motion based on C.P.L. § 440.10(2)(c) without considering the merits of Corrigan's claim.  *See* 8/23/00 County Court C.P.L. § 440.10 Order, submitted as part of Respondent's Memorandum of Law (Docket #7).

Corrigan filed the instant federal habeas petition on March 13, 2001.[4]

## DISCUSSION

---

[3]    On February 1, 2000, in *Gaines v. Kelly*, 202 F.3d 598 (2d Cir. 2000), the Second Circuit granted habeas corpus relief to a petitioner convicted before Judge Hannigan in Niagara County Court in 1982 on the basis that the judge's reasonable doubt instruction violated the due process principles articulated in *Cage v. Louisiana*. *Gaines*, 202 F.3d at 608-10.  The reasonable doubt instruction in *Gaines* was in all essential respects identical to the one given at Corrigan's trial.

[4]    Federal courts employ the "prison mailbox rule" when determining the date a federal petition is filed.  *See generally Houston v. Lack*, 287 U.S. 266, 270-72 (1988) (ruling that a *pro se* prisoner "files" his federal notice of appeal from a denial of habeas relief when he submits his papers to prison authorities for forwarding to the circuit court); *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir.), *cert. denied*, 534 U.S. 886 (2001) (applying prison mailbox rule to prisoner filing initial federal habeas petition with district court). As there is nothing in the docket to indicate when Corrigan turned his papers over to authorities for mailing, the Court will give Corrigan the benefit of the doubt and utilize the date on which Corrigan signed his petition, March 13, 2001.

I.      **Timeliness of the Petition**

   A.      **Statute of Limitations Under AEDPA**

   One of the changes wrought by AEDPA[5] is the imposition of a one-year limitations

period on habeas petitions which begins to run from the latest of several events, including the

date on which the challenged state court judgment becomes final.  *See* 28 U.S.C. § 2244(d)(1);

*Bennett v. Artuz*, 199 F.3d 116, 118 (2d Cir. 1999), *aff'd,* 531 U.S. 4 (2000).  AEDPA's one-year

limitations period does not apply in a strict sense to Corrigan's petition because his conviction

became final on May 9, 1988, well before the enactment of AEDPA on April 24, 1996.  *See*

*Bennett*, 199 F.3d at 118 (citing *Reyes v. Keane*, 90 F.3d 676, 678-79 (2d Cir. 1996) (holding that

AEDPA's one-year limitations period does not apply retroactively), *overruled on other grounds*

*by Lindh v. Murphy*, 521 U.S. 320, 336-37 (1997)).

   The Second Circuit has held that prisoners whose habeas claims accrued prior to

AEDPA's enactment are afforded the "reasonable time" of "one year after the effective date of

AEDPA" to file a federal habeas petition.  *Bennett*, 199 F.3d at 118 (citing *Ross v. Artuz*, 150

F.3d 97,102-03 (2d Cir. 1998)).  That one-year grace period expired on April 24, 1997, over three

years before Corrigan filed his petition on March 13, 2001.

   However, AEDPA provides that "[t]he time during which a properly filed application for

State post-conviction or other collateral review with respect to the pertinent judgment or claim is

pending shall not be counted toward any period of limitation."  28 U.S.C. § 2244(d)(2); *Bennett*,

199 F.3d at 119. In the *Bennett* case, the Second Circuit joined the majority of circuit courts in

---

[5]      Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996).

holding that the tolling provision of § 2244(d)(2) applies to petitions challenging pre-AEDPA convictions.  *See Bennett*, 199 F.3d at 119 (noting that to hold otherwise would effectively discourage appellants from starting and completing the state court review process).

The Second Circuit went on to announce that a state court application or motion for collateral relief is "'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures."  *Bennett*, 199 F.3d at 120; *see also Carey v. Saffold*, 536 U.S. 214, 217, 220-21 (2002).

Respondent argues that the tolling provision "would have stopped when Petitioner received a final decision on his *first* C.P.L. § 440.10 motion on August 1, 1997."  Respondent's Memorandum of Law at 3 (Docket #7) (emphasis in original). Respondent is incorrect.  The tolling would not have ended finally upon the denial of the first C.P.L. § 440.10 motion since Corrigan filed two more motions in state court which further tolled the statute, *i.e.*, the 1997 *coram nobis* application and the 2000 C.P.L. § 440.10 motion.  *See* 28 U.S.C. § 2244(d)(2).

Corrigan contends that his petition should not be time-barred because it relies upon the Second Circuit's February 1, 2000 decision in *Gaines v. Kelly* and the "exhausting of this issue took up several months."  *See* Petitioner's Response Regarding Timeliness at 2 (Docket # 4). Corrigan filed a second C.P.L. § 440.10 motion on June 13, 2000, to raise an argument based on the Second Circuit's decision in *Gaines v. Kelly*, *supra*.  In essence, Corrigan contends that his petition is timely because it was filed within one year of the denial of this second C.P.L. § 440.10 motion. However, Corrigan is also incorrect. Although properly-filed state court applications for collateral relief toll a running statute of limitations, the limitations period does not begin anew each a petitioner files another such application.  *See* 28 U.S.C. § 2244(d)(1), (2).

-5-

When Corrigan filed his first C.P.L. § 440.10 motion on January 31, 1997, he tolled the limitations period which had begun on April 24, 1996.  By that point, however, he was already 282 days into the one-year period.  This left Corrigan with 83 days in which to file his habeas petition, unless he were to file any additional state court motions and thereby obtain the benefit of § 2244(d)(2)'s tolling.

Corrigan's first C.P.L. § 440.10 motion was pending from January 31, 1997, until August 1, 1997, when the Fourth Department denied leave to appeal.  Upon the Fourth Department's denial of leave, the clock began running again.  It ran for 63 days until Corrigan applied for a writ of error *coram nobis* on October 3, 1997.  That filing again tolled the limitations period until the state court denied the application on November 19, 1997.

At that point, Corrigan had 20 days remaining on the one-year limitations period.  To be timely, Corrigan would have had to either file his federal habeas petition by December 9, 1997, or file another collateral state court motion by that date in order to toll the limitations period again.  However, Corrigan did not file his second C.P.L. § 440.10 motion until June 13, 2000.  Thus, the one-year grace period ran out before Corrigan could gain the benefit of the tolling occasioned by the filing of his second C.P.L. § 440.10 motion.

### B.       Equitable Relief

Because AEDPA's one-year period has been construed as a statute of limitations rather than a jurisdictional bar, courts may equitably toll the period. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). Equitable tolling applies only in the "rare and exceptional circumstance." *Id.* (citation omitted).  In order to justify equitable tolling of the one-year period of limitations, Corrigan must show that "extraordinary circumstances" prevented him from filing his petition on

time. *See id.* (citing *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir.1996) (noting that the Second

Circuit has applied equitable tolling doctrine "'as a matter of fairness' where a plaintiff has been

'prevented in some extraordinary way from exercising his rights . . . .'") (citation omitted)).

Furthermore, the petitioner seeking equitable tolling must have acted with "reasonable diligence"

throughout the period he seeks to toll. *See id.* The petitioner must demonstrate a causal

relationship "between the extraordinary circumstances on which the claim for equitable tolling

rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting

with reasonable diligence, could have filed on time notwithstanding the extraordinary

circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000); *Hizbullahankhamon v.*

*Walker*, 255 F.3d 65, 76 (2d Cir. 2001).

In general, the difficulties attendant on prison life, such as transfers between facilities,

solitary confinement, lockdowns, restricted access to the law library, and an inability to secure

court documents, do not by themselves qualify as extraordinary circumstances. *Amante v.*

*Walker*, 268 F. Supp.2d 154, 158 (E.D.N.Y. 2003) (citing *Lindo v. Lefever*, 193 F. Supp.2d 659,

663 (E.D.N.Y. 2002)); *see also Anderson v. O'Gara*, 2002 WL 1633917, at *4 (S.D.N.Y. July

23, 2002) (lack of notice of denial of *coram nobis* petition is not "extraordinary" because, "[i]n

the absence of some specific legal requirement or promise, there is nothing unusual about a court

issuing a decision and a litigant not receiving a copy of it in the mail"). Moreover, simple

ignorance of the applicable rules does not excuse a petitioner's failure to file a timely petition.

*See Plowden v. Romine*, 78 F. Supp.2d 115, 120 (E.D.N.Y. 1999) ("There is no limiting principle

to [petitioner's] argument that simple ignorance—absent any showing of diligence on his part or

allegations of impediments to his staying informed about this case—should provide a basis for

equitable tolling; to hold that the statute of limitations should be extended in this case would allow the statute to be extended indefinitely.").

The Court of Appeals for the Second Circuit, however, has indicated that in limited circumstances an inability to access court papers may warrant an equitable toll. *See Hizbullahankhamon v. Walker*, 255 F.3d at 76 (indicating that the prison authority's discretionary deprivation of access to legal materials might warrant an equitable toll where such action prevented a prisoner from filing a petition for a writ of habeas corpus), *cert. denied*, 536 U.S. 925 (2002); *Raynor v. Dufrain*, 28 F. Supp.2d 896, 900 (S.D.N.Y. 1998) ("Equitable tolling is warranted when some event effectively prohibits the petitioner from pursuing habeas, such as the misplacement of files, or being denied access to materials necessary to file a habeas petition.").

I must conclude that by "extraordinary circumstances," the Second Circuit definitely means extraordinary. It is exceedingly rare for courts in this Circuit to find that such circumstances exist. As the Second Circuit recently explained, it has "established only a limited number of circumstances that may merit equitable tolling, such as where an attorney's conduct is so outrageous and incompetent that it is truly extraordinary, *see Baldayaque* [*v. United States*], 338 F.3d [145][,]152 [(2d Cir. 2003)], and where prison officials intentionally obstruct a petitioner's ability to file his petition by confiscating his legal papers, *see Valverde v. Stinson*, 224 F.3d 129, 133-34 (2d Cir. 2000)." *Doe v. Menefee*, 391 F.3d 147, 159-60 (2d Cir. 2004). A prisoner's mental health problems, where they were sufficiently severe, have been found to constitute "extraordinary circumstances." *See Benn v. Greiner*, 275 F. Supp.2d 371, 374 (E.D.N.Y. 2003) (Weinstein, J.) (finding that the petitioner, who had extremely severe psychiatric problems and spent most of his sentence in the mental health ward, "demonstrated by

a preponderance of the evidence that he could not, without the unexpected beneficence of his friends, have timely filed the federal habeas application"). The Second Circuit has "specifically reserved the question of whether a claim of actual innocence based on newly discovered evidence constitutes an extraordinary circumstance that merits equitable tolling, however, as well as the question of whether the Constitution would require equitable tolling for actual innocence," *Doe*, 391 F.3d at 160 (citing *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000)).

I have not found any precedent standing for the proposition that the unavailability of beneficial case law is an "extraordinary circumstance" that would excuse a petitioner's lateness in filing a habeas petition. This circumstances of this case highlight the anomalous outcomes inherent in having a statute of limitations apply to a claim that an individual is being held in violation of his rights under the United States Constitution. The Second Circuit has held, however, that 28 U.S.C. § 2244(d)(1), which sets forth AEDPA's statute of limitations, does not constitute a suspension of the Great Writ. *See Lucidore*, 209 F.3d at 113 (citations omitted).

The case at bar comes down to this inescapable fact: were there no AEDPA, Corrigan would not have had to worry about a limitations period or equitable tolling. However, AEDPA is now a reality, and it governs the disposition of Corrigan's petition–at least procedurally. This Court cannot reach the merits of the case unless it can find that extraordinary circumstances prevented Corrigan from timely filing his petition. He has not alleged that he was mentally or physically unable to file the petition, nor has he alleged that he was prevented by prison officials from obtaining access to legal materials or from filing his petition. In essence, this Court would have to find that "not thinking there is good enough precedent" constitutes an extraordinary

circumstance. Taking that argument to its logical conclusion, it would mean that prisoners could just sit and wait until favorable case law came down the pike before filing their habeas petitions. I note with some irony that this is apparently what Congress intended AEDPA to curb by imposing a statute of limitations and limiting the filing of second or successive habeas petitions.

## CONCLUSION

Upon review of the record before it, the Court cannot find that Corrigan's case presents extraordinary or exceptional circumstances which would warrant equitable tolling. There were considerable delays between Corrigan's various attempts to seek collateral review of his conviction. For instance, Corrigan waited over two and a half years to file his second motion to vacate pursuant to C.P.L. § 440.10.  These delays do not show reasonable diligence. *See Smith*, 208 F.3d at 17. As a result, equitable tolling is not warranted. The Court therefore must find that Corrigan's petition is untimely.[6]  Respondent's motion to dismiss the petition for a writ of habeas corpus is granted on the basis that the petition is untimely.

## ORDER

It is hereby **ORDERED** that Corrigan's petition for a habeas corpus pursuant to 28 U.S.C. § 2254 is DISMISSED as untimely.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: May 03, 2005
        Rochester, New York

---

[6]      Upon the Court's review of the record and the applicable precedent, it is clear that Corrigan's jury instruction claim has merit. I note, however, that the county court's two-time rejection of the claim based upon C.P.L. § 440.10(2)(c), a state procedural bar, arguably has created a procedural default. However, were Corrigan's petition timely, the Court would be inclined to find that sufficient cause and prejudice exists to excuse the state procedural default, *see Mercer v. Herbert*, 133 F. Supp.2d 219, 234-35 (W.D.N.Y. 2001), and reach the merits of the jury instruction claim.